IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOHN E. VEST, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:11cv047 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Michael F. Urbanski |
| Commissioner of Social Security, ) | United States District Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This social security disability appeal is before the court for review of the Report and Recommendation issued in this case by the magistrate judge on February 17, 2012. In that Report and Recommendation, the magistrate judge concludes the administrative law judge ("ALJ") failed to properly consider Vest's degenerative disc disease and obesity, taken in combination, at step three of the sequential evaluation process. Specifically, the magistrate judge held that the ALJ's failure to address whether the combined effect of these impairments medically equaled Listing 1.04A was erroneous and warrants remand. Having carefully reviewed the record, it is clear to the court that the ALJ's analysis at step three was proper and that his decision that Vest is not disabled is supported by substantial evidence. As such, the magistrate judge's recommendation will be rejected in its entirety and the Commissioner's decision affirmed.

## I.

This matter was referred to the magistrate judge for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties filed cross motions for summary judgment and supporting memoranda and the magistrate judge issued his Report and Recommendation on February 17, 2012. Under 28 U.S.C. § 636(b)(1), the "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Federal Rule of Civil Procedure 72(b) provides the parties with an opportunity to file written objections to the proposed findings and recommendations, but neither party filed objections in this case. Rule 72(b)(3) provides that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." While the text of the rule is silent as to the obligation of the court if no objection is made, the advisory committee notes that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974)). In Thomas v. Arn, 474 U.S. 140 (1985), the Supreme Court had occasion to address the issue, and stated as follows:

> The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

474 U.S. at 154. Thus, even absent an objection, the court retains the ability to review sua sponte a magistrate judge's report and recommendation. The court believes that the particular

2

facts of this case present an appropriate occasion to review the magistrate judge's Report and Recommendation notwithstanding the absence of an objection.

## II.

The magistrate judge agrees with Vest's argument on appeal[1] that the ALJ erred by failing to address whether his obesity and back disorder, in combination, medically equal Listing 1.04A. Report & Recommendation, Dkt. # 15, at 3. In his Report and Recommendation, the magistrate judge noted that the ALJ found Vest's degenerative disc disease and obesity to be severe impairments and determined that these two impairments, in combination, did not meet the requirements of Listing 1.04A.[2] However, the magistrate judge held that the ALJ erred by failing to further "address whether the combined effects of plaintiff's obesity and degenerative disc disease medically equaled Listing 1.04A." Report & Recommendation, Dkt. # 15, at 5. The court disagrees.

The magistrate judge relies on the Third Circuit's decision in Diaz v. Commissioner of Social Security, 577 F.3d 500 (3d Cir. 2009). In Diaz, the claimant argued that the ALJ did not consider the impact of her obesity, in combination with her other impairments, at step three of the sequential evaluation process,[3] although he found obesity to be a severe impairment at step two. The court correctly noted that the "ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace

---

[1] It is worth noting that plaintiff devoted a mere five lines of his twenty page brief to this argument, upon which the magistrate judge's decision to remand is based. See Pl.'s Mem. In Support of Summ. J., Dkt. # 10, at 11.

[2] At the administrative hearing, Vest's argument centered on Listing 1.04C, rather than 1.04A. (R. 48.)

[3] The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

3

function at step three and at every subsequent step" of the evaluation process.  Id. at 504; see generally, Social Security Ruling (SSR) 02-1p.  As the court further recognized, the ALJ must clearly set forth the reasons for his decision but need not use any particular "magic words." Diaz, 577 F.3d at 504 (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (citing Burnett v. Comm'r, 220 F.3d 112 (3d Cir. 2000))).  Because the ALJ in Diaz did not analyze the cumulative impact of claimant's obesity and other impairments on her functional capacities, the court found it was at a loss in its reviewing function, and remanded the case to the Commissioner to determine whether and to what extent Diaz's obesity, in combination with her other impairments, impacted her workplace function.  Id. at 504-05.

The instant case stands in sharp contrast to Diaz.  The ALJ in Diaz did not discuss the impact of the claimant's obesity at step three, leading the Third Circuit to state: "Were there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court" that the ALJ's citation to reports from doctors who were aware of Diaz's obesity sufficed. Id. at 504 (emphasis in original).  In Vest's case, however, the ALJ specifically considered obesity at step three:

> The claimant's **obesity** does not fall within a specific listing, but must be evaluated in conjunction with other related conditions, such as musculoskeletal, respiratory or cardiovascular impairments, pursuant to Social Security Ruling 02-1p.  Since obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listed impairment, the cumulative effects of obesity have also been considered.  Even with this consideration, the evidence fails to meet the requirements of any listed impairment.  For example, the claimant's back disorder with obesity does not meet Listing 1.04A because it is not associated with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.  This impairment also fails to meet Listing 1.04B, as it is not associated

4

> with spinal arachnoiditis manifested by severe burning or painful dysesthesia and Listing 1.04C as it is not associated with lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness and resulting in an inability to ambulate effectively.

(R. 17-18.) The magistrate judge based his recommendation of remand, however, on the fact that the ALJ failed to address explicitly whether the combined effects of plaintiff's obesity and degenerative disc disease medically equaled Listing 1.04A. At step three of the sequential evaluation process, the ALJ is charged with determining whether a claimant's impairments meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. See SSR 96-6p. An impairment or combination of impairments is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. §§ 404.1526(a), 416.926(a). To establish medical equivalency, Vest must present medical findings equal in severity to the Listing criteria. See Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

In his decision, the ALJ explicitly states that Vest's combination of impairments does not medically equal a listed impairment. Indeed, the heading of the ALJ's finding at step three says: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 16.) Additionally, the ALJ stated later in this section of the decision:

> The DDS collected and reviewed the claimant's records. The DDS physicians and psychologists, who are skilled and experienced in reviewing records and assessing the impairments and limitation that are documented in those records, concluded that the claimant's impairments did not meet or equal the requirements of any section of Appendix 1. The records that have been submitted since the DDS completed its review do not warrant a different determination at the third step of the evaluation process. The medical evidence does not contain the objective signs, symptoms or findings, or the

5

> degree of functional limitations, necessary for the claimant's impairments, considered singly or in combination, to meet or equal the severity of any subsection of any section contained in Appendix 1. In reaching this conclusion, the ALJ notes no treating or examining medical source has stated the claimant has an impairment or combination of impairments that meets or equals the criteria of any listed impairment.

(R. 17.) The fact that the ALJ uses the word "meet" instead of the words "meet or equal" when he discusses the impact of Vest's obesity at step three of the analysis of no moment; the ALJ's opinion makes clear that he considered Vest's combination of impairments and determined that they do not meet *or* medically equal a listed impairment.

Moreover, the ALJ's analysis of the medical evidence at steps four and five of the sequential process establishes that Vest's combination of impairments do not medically equal a Listing. See Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."); see also Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (citing Fischer-Ross). The ALJ addresses Vest's obesity in the context of his residual functional capacity ("RFC") assessment as follows:

> The ALJ also notes that the claimant is obese, and he testified he stands $73^{1/2}$ inches tall and weighs 332 pounds, but was on a diet and now weighted 313 pounds. The documentary medical evidence shows the claimant's weight has ranged from 304 to 336 pounds. At a height of $73^{1/2}$ inches and with a weight of 313 pounds, the claimant's body mass index (BMI) is 40.7. BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$). The Clinical Guidelines issued by The National Institutes of Health define obesity as present in general where there is a BMI of 30.0 or above. The ALJ has considered the claimant's obesity in accordance with SSR 02-01[p] and has determined it does not have a significant impact on his other body systems or that it significantly affects his ability with ambulation, mobility or manipulation. As discussed above, the

6

> claimant has used a cane for his back impairment, but the physical examinations have revealed he has generally had a normal gait. The progress notes from the claimant's treating family physician do not contain any references to problems with ambulation, mobility or manipulation. In addition, the claimant has had full range of motion of his extremities, other than his knees, and the orthopedic surgeon who examined the claimant in June 2010 reported that the claimant had full and painless range of motion of his back. Finally the progress notes and reports from treating and examining medical sources do not contain any references to problems or exacerbations of any body system as a result of obesity.

(R. 24-25 (internal citations omitted)). The introduction[4] to Listing 1.04 states "functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason . . . or the inability to perform fine and gross movements effectively on a sustained basis for any reason . . . for a period of at least 12 months." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.00B.2.a. Thus, Vest is required to prove that he is unable to ambulate effectively or perform fine and gross movements effectively in order to meet or medically equal Listing 1.04. See McKoy v. Astrue, No. 4:08-2329-CMC-TER, 2009 WL 2782457, at *16 (D.S.C. Aug. 28, 2009) ("[I]t was not error for the ALJ to consider plaintiff's ability to ambulate effectively, as a threshold criterion, in determining whether plaintiff's impairment met the requirements of Listing 1.04A," as ineffective ambulation is a "critical factor to be considered under all of the Musculoskeletal System Listings" under § 1.00). The ALJ plainly considered the combined effects of Vest's obesity and degenerative disc disease and determined that the medical evidence does not establish that these impairments "significantly affect[] his ability with ambulation, mobility or manipulation" and therefore do not medically equal a listed impairment. (R. 25.)

---

[4] An impairment meets the requirement of a Listing when it satisfies all of the criteria of that Listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).

7

It is plaintiff's burden at step three to establish that he meets or medically equals a listed impairment.  See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).  Vest has failed to establish that the medical evidence of record shows findings that are at least of equal medical significance to the required criteria of Listing 1.04A.  See Jones v. Astrue, No. 5:07-CV-452-FL, 2009 WL 455414, at *15 (E.D.N.C. Feb. 23, 2009); see also Rickabaugh v. Astrue, No. 08-228J, 2010 WL 1142041, at *4 (W.D. Pa. Mar. 24, 2010) ("Given the ALJ's identification of the specific Listings at issue, Rickabaugh can impugn the ALJ's determination at the third step of the process only if he can either identify a different Listing that should have been considered or point to specific evidence ignored by the ALJ that should have yielded a different result with respect to one of the Listings discussed in the ALJ's opinion.").  In a thorough opinion, the ALJ discussed the Listing requirements and explained that the evidence of record does not support a finding of disability at step three.  (R. 16-22.)  The ALJ plainly considered the impact of Vest's obesity on his functional ability and determined that his impairments were not of listing-level severity.  The reviewing state agency physicians concluded that Vest's impairments do not meet or equal the Listing requirements.  There is simply no merit to an argument that the ALJ erred in his analysis at step three of the sequential evaluation process.  It is clear to the court from reading the ALJ's decision, as a whole, that his determination at step three is supported by substantial evidence.

Moreover, the ALJ's decision at step five that there are jobs that exist in significant numbers in the national economy that Vest can perform is supported by the record evidence.  To be sure, Vest has a history of back pain for which he underwent two surgeries in 2008 at the University of Virginia.  Following surgery, he treated with his primary care physician, Dr. Kennedy, for continued pain.  Dr. Kennedy filled out a range of motion form on January 26, 2009, in which he stated Vest had normal range of motion in the cervical spine but limited range

8

of motion—most significantly with flexion and extension—of the thoracolumbar spine. (R. 513.) Vest also had some limited range of motion in his shoulders, hips and knees. (R. 513.) His strength in his upper and lower extremities was 5/5 or 4/5 except for his left calf strength, which was 3/5. (R. 514.) Vest was noted to have a mild to moderately abnormal gait, except for when walking on his right heel and hopping, which were noted to be severely abnormal. (R. 514.) Dr. Kennedy stated on the form that Vest was "unable to stand for 10 minutes during exam." (R. 513.) A subsequent MRI showed improvements with surgery, specifically mild central canal stenosis but no significant foraminal stenosis at L1-L2; moderate central canal stenosis and moderate bilateral foraminal stenosis at L2-L3; mild central canal stenosis, moderate left foraminal stenosis and moderate to severe right foraminal stenosis, as well as moderate narrowing of the right lateral recess at L3-L4; and no significant central canal stenosis but unchanged moderate to severe right foraminal stenosis and unchanged moderate left foraminal stenosis at L4-L5. (R. 528.) Dr. Jane, the neurosurgeon who performed Vest's 2008 surgeries, stated these films "do not reveal an explanation for the pain [Vest] is having. I would recommend physical therapy." (R. 527.) Vest continued to complain of back pain to Dr. Kennedy, reporting physical therapy did not help but massage did. Notably, examination by Dr. Hereford, an orthopedic surgeon to whom Vest presented in June 2010 with a knee-quad tendon tear, showed normal gait, no tenderness of spine, normal stability, normal strength and tone, and full, painless range of motion of the thoracic and lumbar spine. (R. 643.)

Additionally, Vest has a history of bipolar disorder, which he treats with medication. Vest sees a psychiatrist regularly and office notes document his complaints of depression.

9

Global Assessment of Functioning scores noted in the record range from 51 to 53 to 60 (R. 616, 620, 622), revealing moderate symptoms.[5]

On the whole, the treatment notes in the record do not reflect debilitating impairments. The ALJ accounted for Vest's impairments, including his degenerative disc disease and mental impairments, in fashioning a rather limited RFC assessment,[6] finding Vest can perform a limited range of sedentary work that is simple, routine and unskilled in a low stress environment in which Vest would be working more with things than with people. (R. 22.) The vocational expert testified that with this RFC, there are jobs Vest can perform.

It is not the province of a federal court to make administrative disability decisions. The court's job is to determine whether substantial evidence supports the Commissioner's disability decision. To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In this case, it does.

### III.

As such, the court cannot agree with the magistrate judge's finding that the ALJ's analysis at step three was flawed and requires remand. Remand is not appropriate given this record.

---

[5] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000) (hereinafter "DSM-IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

[6] The court notes that the record contains a prior unfavorable disability decision from the ALJ from 2008, which Vest did not appeal.

10

To that end, an Order will be entered rejecting the Report and Recommendation of the magistrate judge in its entirety and affirming the Commissioner's decision.

Entered: September 28, 2012

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge